**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TIMOTHY W. SHARPE<br>12548 Retreat Drive<br>Grand Haven, MI 49417<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN ACADEMY OF ACTUARIES<br>1850 M Street, NW, Suite 300<br>Washington, DC 20036<br><br>Defendant. | Civil Action No.: ______________<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

For his Complaint against the American Academy of Actuaries ("Academy"), Timothy W. Sharpe, by his undersigned attorneys, Wachen LLC, upon knowledge as to his own actions and dealings, and upon information and belief as to Defendant and its actions, alleges as follows:

## NATURE OF THE ACTION

1. The facts that give rise to this action should be highly disturbing to every practicing actuary who has an expectation that, should he or she become the subject of a professional complaint, the Academy's disciplinary process will be handled in a strictly confidential manner, unless and until there is a formal decision to impose public discipline.

2. As Mr. Sharpe discovered, that expectation that the Academy will administer a confidential process, as required by its Bylaws, may in practice be more a pipe dream, than a promise the Academy will actually keep.

3. In Mr. Sharpe's case, the Academy, in an unprovoked, indefensible, reckless, and malicious attack, disseminated embarrassing information from an ongoing confidential

disciplinary proceeding that has had a devastating impact on Mr. Sharpe's actuarial practice, reputation, and well-being.

4. Prior to these events, Mr. Sharpe, a practicing actuary and member of the Academy for close to thirty years, had a successful actuarial practice and excellent reputation for his work representing municipalities throughout the State of Illinois on pension matters.

5. Mr. Sharpe has never been disciplined by the Academy or any other actuarial organization. No client has ever lodged a complaint against him with the Actuarial Board for Counseling and Discipline ("ABCD"), the actuarial disciplinary body that is an operating unit of the Academy.

6. Several years ago, a handful of actuaries in the Chicago suburbs where Mr. Sharpe's practice has focused, became jealous of his success, and launched a campaign to steal his clients, and destroy his practice and reputation.

7. These actuaries decided to use the Academy's disciplinary apparatus as a means to achieve a goal that they could not otherwise achieve through legitimate competition.

8. They filed a series of spurious complaints against Mr. Sharpe with the ABCD, accusing him of various alleged technical violations of actuarial standards.

9. None of these complaints has resulted in any disciplinary action against Mr. Sharpe by the Academy or any other actuarial member organization.

10. Despite the promise of confidentiality during the disciplinary process, the Academy last year leaked an unfounded and unsupportable confidential recommendation by the ABCD that Mr. Sharpe be expelled from the Academy, even though Mr. Sharpe has never been disciplined, and there has been no allegation that Mr. Sharpe's alleged conduct was criminal, fraudulent, dishonest, or immoral. No client has complained about Mr. Sharpe. No one claims material harm

from Mr. Sharpe's alleged actions or omissions.

11. The unjustified ABCD recommendation appears to have resulted from personal animosity toward Mr. Sharpe on the part of various participants, as well as a fundamental misunderstanding of the facts brought about by a flawed process.

12. The ABCD does not, however, mete out discipline; it only recommends a course of action to actuarial organizations of which the subject actuary is a member. It is up to those organizations through their own disciplinary processes to decide what, if any, discipline to impose. These organizations are free to disregard the ABCD's findings and recommendations entirely.

13. The only actuarial organization of which Mr. Sharpe is a member is the Academy, and the Academy, through its disciplinary committee, has yet to hold a hearing to consider the ABCD's confidential recommendation as to Mr. Sharpe.

14. Mr. Sharpe believes the ABCD's recommendation of expulsion is grossly inappropriate. He has defended himself vigorously in the disciplinary process, and had expected to be vindicated and his reputation untarnished when the process was concluded.

15. His expectation, however, was dashed when, shortly after the ABCD issued its confidential recommendation of expulsion, the Academy released this information publicly, in flagrant disregard of its promise to keep these proceedings strictly confidential.

16. This led to widespread dissemination of the ABCD's adverse recommendation throughout the actuarial and business community in which Mr. Sharpe practices, resulting in substantial harm to Mr. Sharpe's practice as clients, feeling substantial public pressure, were forced to terminate Mr. Sharpe's services even though Mr. Sharpe has never been disciplined, and these clients were otherwise completely satisfied with his services.

17. The Academy's breach of confidentiality in the disciplinary process destroyed Mr.

Sharpe's actuarial practice, professional reputation, and ability to earn a living as an actuary. The Academy's actions have also caused Mr. Sharpe severe emotional distress, mental anguish, and other harm.

18. Mr. Sharpe has brought this action to hold the Academy accountable for its disgraceful behavior, to seek redress for the substantial injuries it has caused, and to alert members of the actuarial community to the serious threat that exists if they become the subject of a professional complaint and the Academy decides to leak damaging confidential material as it did in Mr. Sharpe's case.

## PARTIES

19. Plaintiff Timothy W. Sharpe is an individual who resides at 12548 Retreat Drive, Grand Haven, MI 49417. He has been a member of the actuarial profession and the Academy for close to 30 years.

20. Defendant American Academy of Actuaries is an Illinois corporation organized under the Illinois General Not for Profit Corporation Act. Its principal place of business is at 1850 M Street, NW, Suite 300, in Washington, D.C. It is a professional organization of actuaries with more than 18,500 members, according to its website (www.actuary.org).

## JURISDICTION AND VENUE

21. This Court has subject-matter jurisdiction over all claims asserted in this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy in this action exceeds $75,000 and there is complete diversity between the parties to this action (*i.e.*, Plaintiff is a citizen of a different state than Defendant).

22. This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-422 because Defendant maintains its principal place of business in the District of Columbia.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## STATEMENT OF FACTS

24. Mr. Sharpe graduated from the University of Michigan in 1981. He began his actuarial career in the Chicago office of William Mercer. He worked for a number of years at Towers Perrin, Ernst and Whinney, and the Wyatt Company, before starting his own firm in 1992.

25. Since 1992, Mr. Sharpe's actuarial practice has focused on serving local municipalities throughout the State of Illinois, among other types of clients. He has also been a frequent speaker in the actuarial and business communities in the area of postemployment benefits.

26. He has advised municipalities, auditors, and users of government financial statements regarding retiree medical liabilities and accounting. He has spoken at meetings of the Illinois Government Finance Officers Association. He has led discussions on compliance with Government Accounting Standards Board requirements with municipal employees and auditors.

27. Prior to the improper actions of the Academy described in this action, Mr. Sharpe had a successful actuarial practice, and an excellent reputation for his actuarial work for pension funds for public employees, such as firefighters and police.

### Academy Disciplinary Process

28. The Academy serves multiple roles in the actuarial world, including as a professional organization of member actuaries, a credentialing organization for actuaries, and a professional disciplinary review board through the ABCD, an operating division of the Academy.

29. Article X of the Academy's Bylaws establishes the ABCD as an operating unit within the Academy. A true and correct copy of the Academy's Bylaws is attached as Exhibit 2. The ABCD is not a separate legal entity. The ABCD's employees are employees of the Academy.

The ABCD's budgets and resources are managed by the Academy. The ABCD relies on Academy staff for support in its operation and for legal advice. The ABCD receives its funding from the Academy.

30. Article X, section 1 of the Academy's Bylaws authorizes the ABCD to "consider all complaints concerning alleged violations or information suggesting possible violations of the applicable Code(s) of Professional [Actuarial] Conduct and all questions that may arise as to the conduct of a member of a participating actuarial organization, in the member's professional practice, or affecting the interests of the actuarial profession."

31. In this capacity, the ABCD considers disciplinary complaints against actuaries, and recommends what, if any, disciplinary action should be taken against the actuary who is the subject of a complaint, and known as the "subject actuary."

32. The ABCD, however, does not impose discipline on a subject actuary. It simply makes a confidential recommendation to actuarial organizations of which the subject actuary is a member as to what, if any, disciplinary action it believes should be imposed. Possible disciplinary action includes private reprimand, public reprimand, suspension, or expulsion. The ABCD may also dismiss a complaint or recommend that no disciplinary action be taken.

33. The ABCD's recommendation is transmitted to the actuarial organizations of which the subject actuary is member. Those organizations have their own processes for considering the ABCD's recommendation and determining what, if any, discipline to impose against the subject actuary.

34. In the case of the Academy—the only actuarial organization of which Mr. Sharpe is a member—the President of the Academy, in accordance with Article IX, section 3 of its Bylaws, appoints a six-person Disciplinary Committee of current and former Academy board members to

consider and act upon the ABCD's confidential recommendation.

35. The Disciplinary Committee must provide the subject actuary with the opportunity to appear before the committee personally, with counsel if desired, to explain why the ABCD's recommendation should not be followed, and otherwise to defend his or her work.

36. The Disciplinary Committee then decides whether to take any disciplinary action, which requires a two-third's vote of the Committee.

37. In the event that the Committee decides to discipline the subject actuary, he or she has 45 days to appeal that decision before it would otherwise take effect.

38. If the subject actuary appeals within the 45-day window, the Committee's decision does not take effect, and the President of the Academy must appoint a six-person Appeal Panel of Academy board members to consider the subject actuary's appeal.

39. The subject actuary has the right to appear personally, with counsel, before the Appeal Panel to explain why the Disciplinary Committee's decision should not be followed.

40. Thereafter, the Appeal Panel, by a majority vote, may affirm, reduce, or set aside the Disciplinary Committee's decision.

<u>Confidential Process</u>

41. As is commonly the case in disciplinary proceedings involving professionals, disciplinary proceedings involving actuaries are supposed to be confidential to protect the professional reputation of a subject actuary against unfounded accusations.

42. In the January/February 2017 edition of the Academy publication *Contingencies,* the Academy's Immediate Past President Tom Wildsmith acknowledged that "ABCD investigations are conducted on a confidential basis," that "[c]onfidentiality is important," and is to be "maintained throughout the ABCD process."

43. Mr. Wildsmith recognized that it is up to member organizations, not the ABCD, "to decide whether to impose discipline, and whether to make that discipline public."

44. Former Academy President Lawrence Johansen recognized in a 2001 Academy publication, *Actuarial Update,* that confidentiality in the disciplinary process "protects an actuary's professional reputation."

45. Thus, Article IX, section 6 of the Academy's Bylaws requires that "all proceedings" in the Academy's disciplinary process "shall be confidential and kept secret," except in limited circumstances not present here.

46. Article IX, section 7B provides for notice of disposition of a case, *at its conclusion,* to a complainant who lodged a written complaint against a subject actuary. Such notice is also provided to Academy members upon a final determination that a subject actuary is to receive public discipline, pursuant to Article IX, section 7A.

47. Article X, section 9 of the Academy's Bylaws requires that "all proceedings under this Article [involving the ABCD] shall be kept confidential by the ABCD, its staff, investigators, and advisers."

48. While section 9 states that this requirement does not preclude the ABCD from "advising complainants and subject actuaries about the progress and outcome of matters under consideration," this provision does not permit the ABCD to divulge a confidential recommendation of disciplinary action to a complainant while the process is ongoing. This is particularly true in circumstances in which the complainant has made clear that she has no intention of keeping any information she receives from the ABCD confidential.

49. Were it otherwise, the goal of the confidentiality protections in the Bylaws to protect the professional reputation of subject actuaries from meritless complaints while the

confidential disciplinary process is proceeding would be frustrated in the face of an unscrupulous complainant interested in destroying the reputation of a subject actuary.

50. Section 10 of the ABCD Rules of Procedures ("ABCD Rules"), entitled "Confidentiality of Process," states: "The ABCD will make a reasonable effort to keep confidential the facts and circumstances involved in any matter considered by the ABCD for possible counseling or recommendations for discipline or the services of a mediator." A true and correct copy of the ABCD Rules is attached as Exhibit 3.

51. Section 10 further states: "ABCD members, ABCD staff, Investigator(s), Advisors, and mediators shall be specifically made aware of this section of the Rules of Procedure and the requirement for confidentiality."

52. It further states: "Other persons who may be involved in any inquiry shall be informed that the ABCD desires that its inquiry be kept confidential. The names of persons involved in a matter which is the subject of an ABCD inquiry shall not be disclosed to such other persons unless such disclosure is required for the person being consulted to answer the questions being asked."

53. While section 10 notes that the requirements of confidentiality may not preclude the ABCD from "[a]dvising complainants and subject actuaries about the progress and outcome of matters under consideration," as with Article X, section 9 of the Academy Bylaws, this does not permit the disclosure in an ongoing proceeding of an ABCD confidential recommendation of disciplinary action. This is especially true with respect to disclosure to a complainant who has made clear her intention to disclose publicly any information received from the ABCD regarding a subject actuary. Such disclosure by the Academy would be contrary to the goal of maintaining a confidential disciplinary process and making "a reasonable effort to keep confidential the facts

and circumstances involved in any matter considered by the ABCD for possible counseling or recommendations for discipline."

54. Moreover, in the case of an ABCD confidential recommendation of disciplinary action, no "outcome" has occurred because the proceeding is still ongoing until the disciplinary committee of the actuarial organization of which the subject actuary is a member decides whether to follow the ABCD's recommendation and/or impose any discipline on the subject actuary.

55. Despite its guarantees and promises of confidentiality for actuaries who are the subject of ABCD proceedings, the Academy violated its promise of confidentiality by divulging the ABCD's confidential recommendation of disciplinary action against Mr. Sharpe in its report dated January 29, 2016, with regard to a complaint lodged against Mr. Sharpe by Tia Goss Sawhney, an individual Mr. Sharpe has never met and with whom he has never had any dealings of an actuarial (or any other) nature.

<u>Complaint by Tia Goss Sawhney</u>

56. In a letter dated March 23, 2014, addressed to the ABCD, Tia Goss Sawhney lodged a complaint against Mr. Sharpe for his alleged failure to comply with actuarial communication standards. At the time, Ms. Sawhney was an actuary living in the Chicago suburbs.

57. Although Ms. Sawhney's complaint targets Mr. Sharpe's work for Illinois police and firefighter pension funds, she concedes that she is not a pension actuary, a type of actuary she does not appear to hold in high regard.

58. In an article published by the Society of Actuaries in July 2014, Ms. Sawhney makes reference to pension actuaries as "prostitutes."

59. While Ms. Sawhney expresses concern about the quality of Mr. Sharpe's communication in his reports, she acknowledges that she is not assessing the integrity of analysis

in his valuations.

Academy on Notice of Sawhney's Intention to Publicize Proceedings

60. In the final paragraph of her letter, Ms. Sawhney says, "[S]ince these are my opinions and they concern public work, I claim the right to share them in the public domain."

61. She further states, "I do not intend to abide with the ABCD's request to keep my complaint or the ABCD's response to my complaint confidential."

62. Thus, upon receipt of Ms. Sawhney's complaint, the Academy, through the ABCD, was on notice that any information shared with her about Mr. Sharpe would be publicized, and would not remain confidential.

63. To the extent the Academy had any doubts about Ms. Sawhney's intentions, they were made clear in an article she wrote for Wirepoints Illinois Financial News (www.wirepoints.com) that, according to the Wirepoints website, was posted on August 19, 2014.

64. In that article, Ms. Sawhney states, "Based on a review of his work for seven Illinois police funds[,] I filed an Actuarial Board of Counseling and Discipline (ABCD) report against their actuary, Mr. Timothy Sharpe."

65. Ms. Sawhney cites her March 23, 2014 complaint against Mr. Sharpe in footnote 7 of the article and offers to provide a copy to anyone who asks.

66. Ms. Sawhney also contacted a reporter for Crain's Chicago Business who is also the editor of the Forest Park Review about her complaint against Mr. Sharpe. The reporter then wrote a letter dated September 8, 2014, to Mr. Sharpe seeking comment.

67. Upon receiving this letter, Mr. Sharpe contacted the ABCD about Ms. Sawhney's actions. Mr. Sharpe reminded the ABCD of Ms. Sawhney's threat to publicize the proceedings against him, noting that "the only intention of [Ms. Sawhney and other actuaries who have lodged

complaints against him] is to defame me."

68. The actuarial reports by Mr. Sharpe that Ms. Sawhney had attacked in her complaint had been submitted to the Illinois Department of Insurance for review. That Department has never filed a complaint against Mr. Sharpe or raised an issue regarding his reports.

69. In light of Ms. Sawhney's threats and actions, Mr. Sharpe noted that the "ABCD complaint process is simply becoming a vehicle to sabotage the careers and livelihoods of the Members of the Academy."

70. Even before Ms. Sawhney lodged her complaint against Mr. Sharpe, the Academy, through its ABCD, was well-aware of Ms. Sawhney, who, on information and belief, has herself been the subject of one or more ABCD disciplinary complaints against her.

71. On February 24, 2014, after receiving an email from Ms. Sawhney in which she threatened to file a complaint against him, Mr. Sharpe spoke with Brian Jackson, the Academy's staff attorney who provides legal support for the ABCD, about Ms. Sawhney.

72. Mr. Jackson told Mr. Sharpe: "Ms. Sawhney is a pain in the ass. She is causing quite a burden for the ABCD with all of her complaints."

<u>ABCD Reviews Sawhney Complaint</u>

73. In response to Ms. Sawhney's complaint to the ABCD, Mr. Sharpe submitted a vigorous written defense of his actions and requested that the complaint be dismissed.

74. On December 7, 2015, the ABCD held a hearing to consider the allegations in Ms. Sawhney's complaint. Mr. Sharpe was unable to attend the hearing due to a serious illness involving his mother.

75. During the hearing, the ABCD considered the report of its investigator, with whom Mr. Sharpe never had the opportunity to meet to discuss the allegations or to answer any questions

prior to the issuance of the investigator's report.

76. In a confidential report dated January 29, 2016, the ABCD, in response to Ms. Sawhney's complaint and without the benefit of Mr. Sharpe's testimony to the ABCD or to its investigator, recommended that the Academy expel Mr. Sharpe from membership.

77. Mr. Sharpe takes serious issue with the ABCD's report, including its findings and recommendation of expulsion, which is extreme and wildly disproportionate to the allegations against him.

78. In the history of the Academy, only 11 members have ever been expelled. Each of those cases involved instances of criminal and/or fraudulent conduct in which others were hurt.

79. None of the allegations against Mr. Sharpe involves criminal or fraudulent conduct, or otherwise comes close to this level of egregiousness.

80. None of the allegations considered in the ABCD report involves claims of dishonesty, or intentional, malicious, reckless, deceitful, immoral, illegal, or unethical behavior.

81. No client has complained about Mr. Sharpe, and no client is alleged to have suffered economic loss or been hurt in any way by what Mr. Sharpe is alleged to have done.

82. There is no allegation that Mr. Sharpe made any material mistakes in his calculations.

83. No one has claimed that Mr. Sharpe's alleged conduct has embarrassed or otherwise harmed the Academy or the actuarial profession.

84. In addition, Mr. Sharpe has never been disciplined—privately or publicly—by the Academy or any other actuarial organization.

85. Thus, Mr. Sharpe looked forward to the opportunity to defend himself against the ABCD's disproportionate and unsupportable recommendation before the Academy Disciplinary

Committee.

86. That committee has yet to hold a hearing to consider the ABCD's recommendation from over a year ago, much less make any determination as to what, if any, disciplinary action to take against Mr. Sharpe.

87. Mr. Sharpe expected that the Academy's disciplinary process would remain confidential. In accordance with the protections accorded subject actuaries during the pendency of disciplinary proceedings, Mr. Sharpe expected that confidentiality would be maintained while he challenged the ABCD's recommendation such that, if and when he prevailed, his professional reputation would remain untarnished by the ABCD's heavy-handed, unjustifiable, but confidential recommendation.

ABCD Breaches Confidentiality

88. Mr. Sharpe, however, was deprived of this confidential protection when a news article appeared on the Wirepoints website, reporting on the ABCD's confidential recommendation of expulsion. A copy of this article ("Wirepoints Article"), which says it was posted on February 9, 2016, is attached as Exhibit 1.

89. The Wirepoints Article states, "Wirepoints has learned that the Actuarial Board of Counseling and Discipline (the ABCD) recently recommended that Timothy Sharpe, actuary to dozens of troubled Illinois fire and police pension funds, be expelled from membership in the American Academy of Actuaries."

90. The Wirepoints Article connects the ABCD recommendation with Ms. Sawhney's complaint to the ABCD. It states, "The ABCD recommends expulsion or other public discipline only for the most egregious, systematic, and/or persistent violations of the Code of Professional Conduct and Standards of Practice."

91. It notes that "only 11 actuaries have been expelled from the Academy since 1975 and only 20 have been otherwise publicly disciplined." (Citation omitted.)

92. Almost immediately after the posting of the Wirepoints Article, Mr. Sharpe was inundated with inquiries from clients about the situation.

93. As a result of the leak of the ABCD confidential recommendation, most of Mr. Sharpe's clients terminated their relationship with him, even though Mr. Sharpe had not actually been expelled or even disciplined.

94. Many of these clients informed Mr. Sharpe that, even though they believed in him and were completely satisfied with his services, the negative publicity as a result of the Wirepoints Article required them to sever ties with him.

95. As a result of the Wirepoints Article reporting on the ABCD's confidential recommendation, Mr. Sharpe's actuarial practice has been destroyed and his professional reputation ruined. He has also suffered serious emotional distress, mental anguish, and embarrassment.

96. Even if Mr. Sharpe is ultimately vindicated before the Academy's Disciplinary Committee or Appeal Panel and no expulsion or other disciplinary action is imposed, the damage has already been done.

97. The leak of the ABCD's confidential recommendation resulted from the failure of the Academy to take reasonable steps to preserve the confidential nature of the disciplinary process.

98. On information and belief, the Academy informed Ms. Sawhney of the ABCD's confidential recommendation, knowing her intention to ignore the confidentiality of the disciplinary process, and to publicize all aspects, as she had previously done with her complaint.

99. On information and belief, as a result of the Academy's leaking of the ABCD recommendation to Ms. Sawhney, Ms. Sawhney followed through on her stated intention, and informed Wirepoints of the ABCD recommendation, resulting in the Wirepoints Article.

100. On information and belief, the Academy leaked the confidential ABCD recommendation to one or more other third parties outside of the Academy and Mr. Sharpe, resulting in the foreseeable dissemination of that information to Mr. Sharpe's clients and competing actuaries who sought to steal Mr. Sharpe's clients from him.

101. On information and belief, the Academy leaked the confidential ABCD recommendation as a way to short-circuit the disciplinary process, and, in essence, convict Mr. Sharpe before his trial before the Disciplinary Committee had even begun. Now, more than a year later, the Academy's Disciplinary Committee has yet to convene to consider the ABCD's recommendation.

102. On information and belief, this was done because those involved in the leak knew that the ABCD expulsion recommendation would not withstand close scrutiny by the Academy Disciplinary Committee, and would ultimately be rejected.

103. On information and belief, the Academy's violation of the confidentiality protections accorded subject actuaries during the disciplinary process resulted from certain leaders of the ABCD and Academy who do not like Mr. Sharpe and sought to destroy his actuarial practice and professional reputation, and otherwise harm him.

104. That is the only plausible explanation for how members of the ABCD could have voted to expel Mr. Sharpe from the Academy, an extreme measure that has been applied only 11 times in the Academy's history, in cases involving criminal or fraudulent conduct, and wholly inappropriate for Mr. Sharpe's alleged conduct.

105. It is also the only plausible explanation for: the ABCD's consideration of hyped charges never even raised by complainants; refusal to credit the favorable testimony toward Mr. Sharpe of one of its investigators; refusal of Mr. Sharpe's prior requests for guidance to avoid some of the issues that the ABCD later chose to consider; and, the ABCD's double-standard in failing to address similar or more egregious allegations against those actuaries seeking to steal Mr. Sharpe's clients.

**COUNT I**

**Breach of Contract**

106. Mr. Sharpe repeats and realleges each and every allegation contained in paragraphs 1 through 105 as if set forth herein.

107. The Academy's Bylaws and ABCD Rules establish a contractual relationship between Mr. Sharpe and the Academy.

108. The Academy breached its promise of confidentiality to subject actuaries—in this case, Mr. Sharpe—by leaking, releasing, disseminating, and otherwise publicizing the confidential ABCD recommendation of expulsion to outside parties, rather than maintaining confidentiality and limiting dissemination to Mr. Sharpe and those within the Academy directly involved in the disciplinary process and responsible for maintaining confidentiality.

109. Mr. Sharpe satisfied all conditions precedent for receiving the confidentiality protections provided for in the Bylaws and ABCD Rules.

110. The Academy, including through its division the ABCD, breached Article IX, section 6 of the Academy Bylaws, requiring that all proceedings in the Academy's disciplinary process be kept confidential and secret.

111. The Academy, including through its division the ABCD, breached Article X,

section 9 of the Academy Bylaws, requiring that all proceedings involving the ABCD be kept confidential by the ABCD, its staff, investigators, and advisers.

112. The Academy, through its division the ABCD, breached section 10 of the ABCD Rules by failing to make a reasonable effort to keep confidential the facts and circumstances of the matter involving Mr. Sharpe, including the ABCD's confidential recommendation of expulsion.

113. The Academy, including through its division the ABCD, breached its Bylaws and the ABCD Rules to the extent it informed Ms. Sawhney and other third parties of the ABCD's confidential recommendation while the disciplinary process was ongoing, particularly in light of the Academy's knowledge that Ms. Sawhney would release any information she received from the Academy regarding her complaint against Mr. Sharpe.

114. The Academy's breaches of its contractual obligations to Mr. Sharpe were material.

115. The Academy's breaches of its Bylaws and the ABCD Rules were a direct and proximate cause of the serious damage that Mr. Sharpe and his actuarial practice have sustained.

116. The damage to Mr. Sharpe resulting from the Academy's breaches was reasonably foreseeable.

## COUNT II

## Negligence

117. Mr. Sharpe repeats and realleges each and every allegation contained in paragraphs 1 through 116 as if set forth herein.

118. The Academy owed a duty to Mr. Sharpe to keep confidential the ABCD and Academy disciplinary proceedings, including the ABCD's confidential recommendation, while the proceedings were ongoing and until their final conclusion.

119. Among other things, in section 10 of the ABCD Rules, the Academy, including

through its division the ABCD, assumed the duty to Mr. Sharpe "to make a reasonable effort to keep confidential the facts and circumstances involved in any matter considered by the ABCD for possible counseling or recommendations for discipline."

120. The Academy, including through its division the ABCD, breached its duty to Mr. Sharpe by failing to make a reasonable effort to keep the ABCD recommendation confidential, and by disseminating or permitting the dissemination of the ABCD's confidential recommendation, in contravention of the applicable standard of care.

121. The Academy's breach was the direct and proximate cause of actual, serious injury to Mr. Sharpe's actuarial practice, reputation, business interests, and emotional and mental well-being.

122. The damage caused by the Academy's breach was foreseeable, particularly in light of Ms. Sawhney's promise to publicize any information she received from the Academy concerning the disciplinary proceedings involving Mr. Sharpe.

123. The Academy's breach of its duty to Mr. Sharpe was negligent, reckless, knowing, and/or intentional.

124. The Academy was careless in its efforts to prevent the public dissemination of the ABCD's confidential recommendation.

125. On information and belief, the Academy disclosed the ABCD's confidential recommendation with the intention of causing harm to Mr. Sharpe.

126. The Academy's actions against Mr. Sharpe were willful, wanton and malicious, were intended to deliberately harm Mr. Sharpe, and were made with a callous indifference to Mr. Sharpe.

127. The Academy acted with an evil motive or careless indifference to Mr. Sharpe's

rights and interests. The Academy's outrageous conduct warrants the imposition of significant punitive damages.

## COUNT III

### Publication of Private Facts

128. Mr. Sharpe repeats and realleges each and every allegation contained in paragraphs 1 through 127 as if set forth herein.

129. The Academy publicly disclosed and otherwise publicized embarrassing private facts about Mr. Sharpe, including the ABCD's confidential recommendation of expulsion.

130. The Academy publicized the ABCD's confidential recommendation regarding Mr. Sharpe by releasing, disseminating, and/or leaking it to third parties outside of the disciplinary proceedings.

131. The Academy knew that, by publicizing the ABCD's confidential recommendation regarding Mr. Sharpe to Ms. Sawhney and other third parties, the private facts about Mr. Sharpe would be published and disseminated to a large audience that included Mr. Sharpe's clients, and others in the actuarial community.

132. Mr. Sharpe did not consent to the Academy's publicizing of the ABCD's confidential recommendation concerning him.

133. Prior to the Academy's actions, the ABCD's confidential recommendation was not public information, was not in the public record, and was not a matter of legitimate public concern. The Academy's disciplinary process is expected to be confidential during its pendency, as recognized by the leaders of the Academy as well as members of the actuarial community.

134. The Academy's publicizing of the ABCD's confidential recommendation concerning Mr. Sharpe while the disciplinary process was ongoing and before any determination

about disciplinary action against Mr. Sharpe had even been considered, much less decided, would be highly offensive to a reasonable person.

135. The Academy's publicizing of the ABCD's confidential recommendation concerning Mr. Sharpe while the disciplinary process was ongoing and before any determination about disciplinary action against Mr. Sharpe had even been considered, much less decided, would be highly offensive to a member of the Academy, and members of the actuarial community generally.

136. The Academy's publicizing of the ABCD's confidential recommendation concerning Mr. Sharpe has caused substantial injury to Mr. Sharpe's actuarial practice, business interests, reputation, and emotional, mental, and general well-being.

137. On information and belief, the Academy publicized the ABCD's confidential recommendation concerning Mr. Sharpe for the purpose of causing injury to Mr. Sharpe, and, in essence, disciplining him before the Disciplinary Committee had even considered the ABCD's confidential recommendation.

138. The Academy's actions against Mr. Sharpe were willful, wanton and malicious, were intended to deliberately harm Mr. Sharpe, and were made with a callous indifference to Mr. Sharpe.

139. The Academy acted with an evil motive or careless indifference to Mr. Sharpe's rights and interests. The Academy's outrageous conduct warrants the imposition of significant punitive damages.

## RELIEF REQUESTED

For the reasons set forth above, Plaintiff Timothy W. Sharpe respectfully requests that this Court enter judgment:

A. awarding Mr. Sharpe compensatory damages in excess of $1 million;

B. awarding Mr. Sharpe punitive damages in excess of $1 million;

C. awarding Mr. Sharpe attorneys' fees and costs relating to this action; and

D. granting such additional relief as may be just and proper.

## JURY DEMAND

Timothy W. Sharpe demands a trial by jury on all claims so triable.

Dated: February 8, 2017

David S. Wachen (DC Bar No. 441836)
WACHEN LLC
11605 Montague Court
Potomac, MD 20854
(240) 292-9121
Fax (301) 424-9095
david@wachenlaw.com

*Attorneys for Plaintiff Timothy W. Sharpe*