**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**TIMOTHY W. SHARPE**,

    Plaintiff,

v.

**AMERICAN ACADEMY OF ACTUARIES**,

    Defendant.

Case No. 1:17-cv-00258 (TNM)

## MEMORANDUM OPINION

Plaintiff Timothy W. Sharpe is an actuary and voluntary member of defendant American Academy of Actuaries (the "Academy"), a professional accreditation association. Am. Compl. ¶¶ 26-27, 36. Mr. Sharpe's six-count complaint seeks damages and injunctive relief from the Academy's alleged unlawful dissemination of information regarding Mr. Sharpe's disciplinary proceeding within the organization. *Id.* 29-39. Pending before the Court is the Defendant's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. to Dismiss Am. Compl. Having confirmed that jurisdiction and venue is proper in this Court,[1] and upon consideration of the pleadings, relevant law, and related legal memoranda in opposition and in support, I find that all counts in the complaint should be dismissed for failure to state a claim upon which relief can be granted. Accordingly, the Defendant's motion is GRANTED, and the complaint is DISMISSED.

---

[1] *See* 28 U.S.C. §§ 1332, 1391.

1

# I.  BACKGROUND

Mr. Sharpe is an actuary who has been practicing the profession for nearly 30 years. Am. Compl. ¶ 6. Among his clients are municipalities in the state of Illinois, for which he provides services related to pension matters. *Id.* Throughout his professional career, Mr. Sharpe has been a voluntary member of the Academy, a professional organization of actuaries with over 18,500 members. *Id.* at ¶¶ 26-27. In March 2014, Mr. Sharpe was the subject of a complaint filed with the Academy by Tia Sawhney, also an actuary, who raised concerns about Mr. Sharpe's alleged failure to comply with actuarial communication standards. *Id.* at ¶ 92.

The Academy's Bylaws establishes an operating unit within the Academy, the Actuarial Board for Counseling and Discipline ("ABCD"), to consider complaints made against member actuaries and recommend discipline to the Academy. *Id.* at ¶¶ 36-40. While the ABCD is part of the Academy, it also follows its ABCD Rules of Procedure ("ABCD Rules") setting forth its disciplinary process, which was promulgated pursuant to, and consistent with, the Academy's Bylaws' enabling provision. *See* Am. Compl. Ex. 2, Art. X, § 1 (establishing the ABCD and authorizing it to establish Rules of Procedure); *id.* Ex. 3 (the ABCD Rules).[2] The ABCD does not itself impose discipline on the subject actuary; rather, it makes a recommendation to the Academy, which makes a final determination on whether to discipline the subject actuary, and, if so, what form it should take. *Id.* at ¶ 40. Possible disciplinary actions include a private reprimand, public reprimand, suspension, or expulsion. *Id.*

---

[2] Where an actuary is a member of multiple actuarial professional organizations, an Agreement on Joint Discipline controls, which outlines the complaint review and disciplinary process as among the multiple professional organizations. Am. Compl. ¶¶ 44-53. Mr. Sharpe is a member only of the Academy, *id.* at ¶ 43, and for the reasons stated in Part III.A.1., *infra*, I focus on the procedures applicable to subject actuaries who are members only of the Academy.

Both the Academy's Bylaws and the ABCD Rules contain provisions governing the confidentiality of disciplinary proceedings. In the Bylaws, Article Ten provides that "[e]xcept as otherwise provided in these Bylaws, all proceedings under this Article shall be kept confidential by the ABCD, its staff, investigators, and advisers." Am. Compl. Ex. 2, Art. X, § 9. In the ABCD Rules, Section Ten similarly provides that "[t]he ABCD will make a reasonable effort to keep confidential the facts and circumstances involved in any matter considered by the ABCD for possible counseling or recommendations for discipline or the services of a mediator." *Id.* Ex. 3, § 10. However, both governing documents are explicit that the ABCD can provide the complainant with information on the disciplinary proceedings. Both documents state that the "requirement as to confidentiality shall not preclude the ABCD from [] [a]dvising complainants and subject actuaries about the progress and outcome of matters under consideration". *Id.*; *id.* Ex. 2, Art. X, § 9. There is no confidentiality requirement imposed upon complainants (or, for that matter, the subject of a complaint).

In Mr. Sharpe's case, the Academy held a hearing on December 7, 2015 to consider the allegations, which Mr. Sharpe was unable to attend due to a serious illness involving his mother. *Id.* at ¶ 110. On January 29, 2016, the ABCD issued a written report recommending that the Academy expel Mr. Sharpe from membership. *Id.* at ¶ 112. On February 9, 2016, an article appeared on a website, WirePoints, under the headline: "Illinois Fire and Police Pension Actuary Facing Actuarial Discipline – WP Exclusive." *Id.* Ex. 1. The article, authored by Mark Glennon, founder of WirePoints, stated that the ABCD had "recently recommended that Timothy Sharpe, actuary to dozens of troubled Illinois fire and police pension funds, be expelled from membership in the [Academy]," and that the "recommendation is the result of separate complaints by two actuaries, one by actuary Tia Goss Sawhney." *Id.*

3

Mr. Sharpe contends that the Academy and/or ABCD must have improperly disseminated the ABCD's recommendation of expulsion, and that this allegedly improper conduct has resulted in the loss of clients. *Id.* at ¶¶ 131, 139. Accordingly, Mr. Sharpe sued the Academy for breach of contract, negligence, publication of private facts, denial of due process and fair procedure, tortious interference with contract, and tortious interference with prospective business advantage. *Id.* at 29-38. The Academy responds that Mr. Sharpe fails to state a claim upon which relief can be granted. Def.'s Mot. to Dismiss Am. Compl. For the reasons that follow, I find that each count in the Amended Complaint fails to state a claim upon which relief can be granted, and dismiss the complaint in its entirety.

## II. LEGAL STANDARD

A party may move to dismiss a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requires the complaint to contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is insufficient if it merely offers "'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 546). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545-46.

4

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). The Court does not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Last, "[i]n determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

## III. ANALYSIS

As this matter is properly before the Court based on diversity of citizenship,[3] I must first address which state law controls Mr. Sharpe's claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In this District, the Court must first determine whether there is a conflict between the laws of the relevant jurisdictions, and if not, apply the law of the District of Columbia. *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992). The Defendant argues that no "true conflict" exists between District of Columbia law and Illinois law, Mem. of P. & A. in Support of Def.'s Mot. to Dismiss Am. Compl. 21-24, and the Plaintiff does not address the issue in his brief. Having reviewed the laws of both jurisdictions, I agree with the Defendant that no "true conflict"

---

[3] The Defendant is an Illinois corporation with its principal place of business in Washington, District of Columbia. Mem. of P. & A. in Support of Def.'s Mot. to Dismiss Pl.'s Am. Compl. 21. Mr. Sharpe, although a citizen of Michigan, Am. Compl. ¶ 26, has provided services to Illinois pension funds since 1992 and has maintained a place of business in Illinois. *Id*. ¶¶ 32-33.

5

exists. *See GEICO*, 958 F.2d at 1141. Analyzing the Amended Complaint under District of Columbia law, I find that the Plaintiff has failed to state a claim on each of the counts alleged.

### A. Breach of Contract

For the Plaintiff's breach of contract claim to survive a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6), he must sufficiently plead that there was: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015). The first two elements are satisfied as the Academy does not contest that the Bylaws and ABCD Rules form a contract between Mr. Sharpe and the Defendant. Mem. of P. & A. in Support of Def.'s Mot. to Dismiss Am. Compl. 27. As for a breach of duty, the Amended Complaint points to four contractual provisions that the Defendant allegedly violated—Section Six on the Agreement on Joint Discipline; Article Nine, Section Six of the Academy Bylaws; Article Ten, Section Nine of the Academy Bylaws; and Section Ten of the ABCD Rules. Am. Compl. ¶¶ 183-186. Because the former two provisions do not apply to the alleged conduct, and the latter two provisions explicitly permit disclosure to the complainant, none of these provisions support a finding that a plausible breach of contract occurred.

### 1. Agreement on Joint Discipline and Article Nine of the Academy Bylaws

A plain reading of the Agreement on Joint Discipline and Article Nine, Section Six of the Academy Bylaws foreclose the possibility that these provisions give rise to a breach of contract claim. It is undisputed that Mr. Sharpe is a member only of the Academy and not of any other actuarial organization, and that the ABCD issued its recommendation on January 29, 2016. *See*

Am. Compl. ¶¶ 43, 112. Therefore, the Agreement on Joint Discipline does not apply because the agreement effective at the time the ABCD rendered a decision in his case dictates,

> If a Referring Body issues a recommendation to discipline a Subject Actuary who is a member of only one (1) of the Parties, such party shall proceed in accordance with its own individually established procedures for addressing such a recommendation, and this Agreement shall have no application to such proceeding.

*Id.* Ex. 7 ¶ 3.A. (Amended and Restated Agreement on Joint Discipline dated December 10, 2015).[4] Therefore, as a member only of the Academy, the Agreement on Joint Discipline has no application to Mr. Sharpe's disciplinary action. Article Nine of the Academy Bylaws is also inapplicable to Mr. Sharpe's scenario. Article Nine pertains to the Academy's process of reviewing and taking action on a disciplinary recommendation from the ABCD. *See* Am. Compl. Ex. 2, Art. IX, § 1 (referring complaints to the ABCD); *id.* § 3 ("govern[ing] proceedings to consider and act upon disciplinary *recommendations* concerning Academy members") (emphasis added); *id.* § 4 (setting forth procedures for appeals of the Academy's disciplinary determinations). It is clear from the provisions of Article Nine that it relates to the Academy's process for referring and acting on disciplinary recommendations, and the Amended Complaint alleges that the Academy had, at the time, not yet acted on the ABCD's disciplinary recommendation. *See id.* at ¶ 17. Therefore, Article Nine of the Academy's Bylaws cannot form the basis for a breach of contract claim.

---

[4] The Plaintiff argues that an earlier version of the agreement governs instead, Am. Compl. ¶¶ 160-166, but this, too, is countered by the explicit language of the document. The agreement dated December 10, 2015 specifies that it shall be effective for "cases in which a Referring Body recommends disciplinary action on or after December 10, 2015," and that "the terms and conditions of the Original Agreement shall have no further force and effect for any case in which a recommendation of disciplinary action is issued by a Referring Body on or after December 10, 2015." *Id.* Ex. 7 ¶¶ 10, 13. Parties are, of course, free to contract a certain date to be the effective date of an agreement, regardless of the actual date of execution. *See, e.g.*, *Sweetman v. Strescon Indus.*, 389 A.2d 1319, 1322 (Del. 1978).

## 2. Article Ten of the Academy Bylaws and Section Ten of the ABCD Rules

Turning to Article Ten, Section Nine of the Academy Bylaws and Section Ten of the ABCD Rules, neither of these provisions support a claim for breach of contract because both explicitly allow the ABCD to advise complainants "about the progress and outcome of matters under consideration." *See id.* Ex. 2, Art. X, § 9; *id.* Ex. 3, § 10. The Plaintiff makes several arguments about why this language is not fatal to his claim, but none meet Rule 12(b)(6)'s pleading standard.

The Plaintiff first argues that it is not clear who informed WirePoints about the ABCD's recommendation of expulsion. *Id.* at ¶¶ 140-142. But this is no whodunit. Based on the Amended Complaint and its attachments, the reasonable inference to draw is that the ABCD—per its policies—provided its recommendation to Ms. Sawhney, the complainant, who then disclosed the recommendation to further third parties.[5] The WirePoints article mentions Ms. Sawhney and the fact of her complaint by name. Am. Compl. Ex. 1. Further, Ms. Sawhney herself declared her intention to publicize the complaint and outcome. In her complaint to the ABCD, she announced, "since these are my opinions and they concern public work, I claim the right to share them in the public domain" and "I do not intend to abide with the ABCD's request to keep my complaint or the ABCD's response to my complaint confidential." *Id.* at ¶¶ 96-97.

---

[5] The Defendant argues that I should only give effect to the Plaintiff's Original Complaint, wherein he alleged that the Academy "informed Ms. Sawhney of the ABCD's confidential recommendation" and that she, in turn, informed WirePoints of ABCD's recommendation. Compl. ¶¶ 98-99. In the Defendant's view, the apparent about-face in the Plaintiff's position means that I should only accept as true the factual inference that the Defendant disclosed the ABCD's recommendation to Ms. Sawhney. Def.'s Mot. to Dismiss Am. Compl. 25-26 (citing *Hourani v. Mirtchev*, 943 F. Supp. 2d 159 (D.D.C. 2013)). Because I find that even under the Amended Complaint, the Plaintiff fails to state a claim upon which relief can be granted, I need not reach this question, but note that the Original Complaint alleges that "the Academy leaked the confidential ABCD recommendation to one or more third parties outside of the Academy". Compl. ¶ 100.

A few months after submitting her complaint to the ABCD, she authored an article for WirePoints disclosing that she "filed an [ABCD] report against [certain Illinois police funds'] actuary, Mr. Timothy Sharpe." *Id.* at ¶¶ 99-100. The following month, Ms. Sawhney contacted a reporter about her complaint against Mr. Sharpe. *Id.* at ¶ 102. Ms. Sawhney's clear intention and actions taken to publicize her complaint against the Plaintiff, coupled with the WirePoints article's citation to her complaint, lead to the inevitable inference that she provided the ABCD's recommendation to WirePoints. While there remains a possibility that the Academy or ABCD improperly disclosed the ABCD's recommendation to someone other than Ms. Sawhney, a "sheer possibility" does not constitute plausibility. *See Twombly*, 550 U.S. at 545-46.

The Plaintiff next argues that the ABCD flouted its responsibility to "make a reasonable effort to keep confidential the facts and circumstances involved in any matter considered by the ABCD for possible counseling or recommendations for discipline" because Ms. Sawhney made clear to the ABCD that she did not intend to keep its response to her complaint confidential. Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss Am. Compl. 36. This argument is unpersuasive because the ABCD's obligation with respect to making a reasonable effort to keeping information confidential is cabined by the very next sentence, which unequivocally states that the requirement "*shall* not preclude the ABCD from [] [a]dvising complainants and subject actuaries about the progress and outcome of matters under consideration." *See id.* Ex. 2, Art. X, § 9 (emphasis added); *id.* Ex. 3 § 10 (emphasis added). Although neither the Academy's Bylaws nor the ABCD Rules seem to require or compel the disclosure of any information to a complainant, and the Plaintiff may fairly argue that it would be in poor taste to disclose the ABCD's recommendation in an instance where a complainant has so clearly made known her intention to disclose the recommendation, these provisions cannot support a claim for breach of contract in

light of the explicit provisions permitting the disclosure of certain information to the complainant.

Last, the Plaintiff contends that the ABCD's recommendation was not an "outcome of [a] matter[] under consideration" and was therefore ineligible to be provided to the complainant under the Academy's Bylaws and the ABCD Rules. Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss Am. Compl. 30-31. Instead, the Plaintiff suggests that "matter" is a broad term that encompasses both the ABCD's investigative work and recommendation, as well as the Academy's determination on whether to implement the ABCD's recommendation. *Id.* Under this interpretation, it would be premature to inform the complainant of the ABCD's recommendation. *Id.* This argument, too, falls short on account of the plain language and structure of the Academy's Bylaws and the ABCD Rules. As previously discussed, the Academy's Bylaws describe the handling of disciplinary proceedings in Article Nine (governing the Academy's process) and Article Ten (governing the ABCD's process). Article Ten establishes the basic procedures and principles for the ABCD's investigative and disciplinary recommendation process, and it is pursuant to Article Ten that the ABCD Rules were established. *See* Am. Compl. Ex. 2 Art. X, § 1 ("The ABCD is authorized to establish Rules of Procedure and operating guidelines not inconsistent with the requirements of this Article."). Within Article Ten, cases before the ABCD are referred to as "matter[s]" on multiple occasions. Article Ten, Section One requires that "[n]otice of the inquiry along with the factual basis for the inquiry and an opportunity to comment *on the matter before the ABCD* determine whether an investigation should be initiated." (emphasis added). Article Ten, Section Five states that "[t]o *review a matter*, the Chairperson shall appoint a primary Investigator and may appoint additional

Investigators." (emphasis added).  Thus, it is consistent that a case before the ABCD would be referred to as a "matter under investigation" in Article Ten, Section Nine.

The Plaintiff's interpretation fares no better within the ABCD Rules, for the very provision on which he relies for his breach of contract claim, Section 10, clearly indicates that a "matter" is a case that results in the ABCD's disciplinary recommendation.  Indeed, the section starts: "The ABCD will make a reasonable effort to keep confidential the facts and circumstances involved *in any matter considered by the ABCD* for possible counseling or recommendations for discipline . . . . The requirement as to confidentiality shall not preclude the ABCD from[] [a]dvising complainants and subject actuaries about the progress and outcome of matters under consideration". *Id.* Ex. 3 § 10 (emphasis added).

Defining an "outcome of [a] matter[] under consideration" as the ABCD's disciplinary recommendation is also consistent with the ABCD's and Academy's roles in the disciplinary process.  As previously established, the ABCD does not impose discipline on an actuary itself, but makes a recommendation of discipline to the Academy.  Thus, the ABCD's role ends when it issues its recommendation and report, and the "outcome of [a] matter[] under consideration" by the ABCD is necessarily its disciplinary recommendation.

### B.  Negligence; Publication of Private Facts; Tortious Interference

Given the reasonable inference drawn from the facts pled in the Amended Complaint—namely, that the ABCD provided Ms. Sawhney, the complainant, with its disciplinary recommendation as permitted by the Academy's Bylaws and the ABCD Rules—the majority of the Plaintiff's other claims also fail.  The Plaintiff's Amended Complaint fails to state a claim for negligence because even assuming, *arguendo*, that the Defendant owed a duty to the Plaintiff, there could not have been a breach of the Defendant's duty under these circumstances.  *See*

11

*Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 982 (D.C. 2014) (explaining that negligence requires a showing that the defendant owed a duty to the plaintiff, the defendant breached that duty, and injury resulted to the plaintiff proximately caused by the breach of duty).

The Plaintiff's claim for publication of private facts fails to adequately allege critical elements of the tort: publication absent any waiver. *See Wolf v. Regardie*, 553 A.2d 1213, 1220 (D.C. 1989) (requiring publication of private facts to require publicity, absent any waiver or privilege, given to private facts, in which the public has no legitimate concern, and which would be highly offensive to a reasonable person of ordinary sensibilities). The Amended Complaint has not sufficiently pled that the Academy and/or the ABCD improperly published Mr. Sharpe's disciplinary proceeding as the Bylaws and ABCD Rules unambiguously provide for the disclosure of the "outcome of [a] matter[] under consideration"—*i.e.*, the ABCD's recommendation—to a complainant.

Additionally, the Plaintiff's tortious interference with contract and tortious interference with prospective business advantage claims fail because he has not sufficiently alleged that the Defendant intentionally interfered with any business relationship or expectancy. *See Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012) (listing the elements of intentional interference with business relations as the existence of a valid contract or business relationship; knowledge of the contract or relationship; intentional interference with the contract or relationship; and damages caused by the interference); *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986) (explaining that the elements for intentional interference with a prospective business advantage "runs 'parallel'"). The Amended Complaint does not sufficiently plead facts from which to plausibly infer that the Defendant intentionally interfered with the Plaintiff's business or business expectancy, nor does it plead the specific contracts or expectancies that the Plaintiff claims were interfered with, as he

is required to do. *See, e.g.*, *Nyambal v. Alliedbarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 316 (D.D.C. 2016) ("tortious interference claims are routinely dismissed where the plaintiff fails to name specific contractual relationships that the defendant allegedly interfered with, or to identify any facts related to future contracts compromised by the alleged interferer.").

### C. Denial of Due Process

The Plaintiff's remaining claim for denial of due process also fails to meet Rule 12(b)(6). Courts ordinarily do not interfere with the internal disciplinary process of voluntary, private associations absent a failure of the association to follow its own rules, *see, e.g.*, *Levant v. Whitley*, 755 A.2d 1036, 1043-44 (D.C. 2000), and should the process be reviewed, a "fundamental fairness" standard governs. *See, e.g.*, *Blodgett v. University Club*, 930 A.2d 210, 227 (D.C. 2007). As I have already determined, the Plaintiff has not sufficiently pled that the Academy and/or ABCD violated the confidentiality provisions in their Bylaws and ABCD Rules. The Plaintiff also argues that the Academy failed to refer the matter to a Joint Disciplinary Committee pursuant to the Agreement on Joint Discipline; however, this argument is a nonstarter pursuant to my prior determination that the Agreement on Joint Discipline does not apply to Mr. Sharpe's case. Last, the Plaintiff seeks an order enjoining the Academy from taking further action in his disciplinary matter until this litigation is resolved. By reason of a lack of sufficient showing that the Defendant failed to follow its own rules—either by violating the confidentiality provision or by not referring the matter to a Joint Disciplinary Committee—and this Court's dismissal of all counts in the Amended Complaint, I find that this remedy is unwarranted.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Defendant's Motion to Dismiss is GRANTED. A separate order will issue.

**SO ORDERED.**

Dated: January 12, 2018

/s/
TREVOR N. MCFADDEN
United States District Judge